IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **01-cv-00384-JLK (CBS)**

**STEVEN H. GLAESER**,

    Plaintiff,

v.

**ACADEMY SCHOOL DISTRICT 20, KATHLEEN A. CRUME, HEIDI V. PACE, SIERRA MARCELLA PETERS, JEFF PETERS, CAROL PETERS and JANE DOES #1 THROUGH 10 AND JOHN DOES #1 THROUGH 5,**

    Defendants.

_____

ORDER ON PETERS DEFENDANTS' MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT
_____

KANE, J.

Upon careful consideration of the Motion of Sierra, Carol and Jeff Peters to Dismiss Plaintiff's Claims Against Them or, in the Alternative, for Summary Judgment (Doc. 67), the Motion is GRANTED in part and DENIED in part based on the following rulings:

1. Plaintiff's federal civil rights claims against the Peters Defendants are DISMISSED with prejudice under both a 12(c) and Rule 56(c) standards based on a failure of colorable allegations and/or evidence establishing the Peters as co-conspirators or joint actors "under color" of state law for purposes of liability under 42 U.S.C. §§ 1983 or 1985.  This failure has been more or less apparent since the beginning of the litigation, but because of my Order to Show Cause

noting the derivative nature of Glaeser's constitutional claims against the Peters and directing Glaeser to establish the viability of his claims against principal School District first, attention was drawn away from the viability of Glaeser's claims against the Peters independently of those claims.

> Section 1983 imposes civil liability only upon a
>
> [P]erson who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory,
> subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by
> the Constitution and laws  . . . .

42 U.S.C. § 1983.  Persons acting on their own behalf as individuals, and not with any apparent or actual authority of the state, may be liable as individuals for any wrongs or torts committed against another, but may not be liable as "persons [acting] under color of [state law]" under § 1983.

In the instant case, Glaeser contends Sierra Peters and her parents "jointly engaged" with state officials to impugn his character and wrongfully terminate his employment for purposes of § 1983's "under color of [state law]" requirement, citing *United States v. Price*, 383 U.S. 787 (1966).  *Price* is the 1960s civil rights era case in which the Supreme Court recognized that private actors could be deemed "persons" within the purview of §§ 1983 and 1985 based on allegations that they conspired and acted jointly with a Mississippi law enforcement officer to kidnap, detain and murder two civil rights workers and their African American

companion.  The specific allegations in *Price* were the sheriff and his private co-conspirators hatched a plan whereby the sheriff would release the three men – who had been detained at the local jail – late at night and then would follow them as they drove away and then join with the private actors to stop their car, assault and murder them.  The propriety of this analogy aside, neither Glaeser's allegations nor his evidence support its application in this case.

In the instant case, Glaeser contends Sierra Peters and her parents conspired and acted jointly with school officials to defame him and get him fired from his job without due process.  His evidentiary support is a written "Statement, dated April 16, 1999," which "was 'a school official's summary of [Sierra Peters' verbal] statement' . . . showing joint action between Defendant Academy School District and Defendant Sierra Peters."  Pl.'s Reply [sic] to Mot. Dismiss at p. 3.  Both the allegation and the evidence fail to support a cause of action against private high school student Sierra Peters – much less her parents – as individuals who were acting "under color of [state law]"when Sierra made her statements to school officials about Mr. Glaeser's alleged misconduct.

A student's statement, summarized by a school official, is simply not "joint action" for purposes of cloaking a private individual's statements – which are hearsay on this record – with the imprimatur of the state for purposes of § 1983.  Moreover, conclusory allegations of conspiratorial purpose in making these statements fail to give rise to a cause of action under 42 U.S.C. § 1985.  *Price*

3

   offers no support for a contrary conclusion.

2.  Glaeser's allegations fail to state a claim against the Peters under § 1985 for the additional reason that he is not a member of a protected class for purposes of the equal protection analysis mandated by *Griffin v. Breckenridge*, 403 U.S. 88 (1971). Glaeser's assertion that Sierra Peters "wanted Plaintiff removed from his teaching position [and] [v]iolat[ed] his Property and Liberty Interests without Substantive or Procedural Due Process [sic]" misapprehends the nature of the constitutional analysis to be applied by failing to establish the requisite invidious or class-based discriminatory animus necessary to state a claim under § 1985. Personal animus does not give rise to an equal protection violation unless that animus coincides with animus on the basis of ones status as a member of a protected class. Because Glaeser does not claim to be a member of a constitutionally recognized protected class, he cannot sustain a cause of action against the Peters' for conspiracy to deprive him of his equal protection rights. Glaeser's § 1985 claim is dismissed for this additional reason as well.

3.  To the extent Glaeser continues to assert a claim for defamation against either Jeff or Carol Peters, those claims are DISMISSED. Glaeser does not attribute any statements, defamatory or otherwise, to the parents of Sierra Peters.

4.  Glaeser's defamation claim against Sierra Peters is more problematic, particularly given his submission of an affidavit from a former student aide stating that in the weeks before Sierra made her April 16, 1999 complaints to school officials which

Glaeser contends were defamatory, the aide "heard Sierra Peters tell [three other students] that she planned to get 'Mr. Glaeser fired because nobody liked the class or the way he taught and everyone's grades were suffering.'" *See* Affid. of Barbara A. Crawford (attached as Ex. A to Pl.'s Resp. to Mot. Dismiss). Assuming the April 16 statements attributed to Sierra Peters tended to harm his reputation, the injection of evidence that would tend to show a tortious purpose or malice in making them would support allowing Glaeser's claim to proceed to trial. The situation is troubling because without such evidence, the presumption that Sierra acted in good faith by bringing complaints to school officials sharing a "common interest" with her would prevail and entitled Sierra to summary judgment on the defamation claim.

The elements of a cause of action for defamation (slander and libel) are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Walters v. Linhof*, 559 F.Supp. 1231, 1234 (D.Colo.1983)(citing *Restatement of the Law of Torts 2d,* § 558 (1979)); *accord Williams v. District Court, Second Judicial Dist., City and County of Denver* 866 P.2d 908, 912 (Colo. 1993)(citing *Walters*).

The Peters contend the verbal statements attributed to Sierra in the April 16, 1999 written "Statement" at issue are not defamatory as a matter of law. As

5

paraphrased by the school official to whom she complained, Sierra's allegedly defamatory assertions are as follows:

> **What happened?**  Sierra states that Mr. Glaser [sic] looks at her chest when talking.  He does this in both classes.  She says she is scared of Mr. Glaser and tries to cover her chest when talking to him.  According to Sierra, Mr. Glaser has told people (who are sitting on a table) to get off the table unless they are going to dance for him. . . . Sierra states that Mr. Glaser tells her to come and talk with him alone.  Sierra will not go.  Sierra said he told the class that he buys his underwear at Victoria's Secret. She also said that last semester he read a poem about underwear to the class that talked about how it holds things up for girls and down for boys.
> 
> Sierra said Mr. Glaser picks on she [sic] and [another student]. . . . Sierra said she is afraid to be around Mr. Glaser.  On one occasion, she and [a third student] were alone with Mr. Glaser, asking him about ungraded papers. . . . Two boys came into the room and, according to Sierra, Mr. Glaser told the boys to get out because he wanted to be alone with the girls.

Statement, attached as Ex. A to Def. Peters Mot. Dismiss or for Simm. J.  Glaeser contends Sierra's statements were defamatory and false when placed in their proper context, and were made in a premeditated attempt to damage his reputation and get him fired.  In support, as set forth above, he submits the affidavit of Barbara Crawford.

A defamatory communication is one which tends to hold the plaintiff up to hatred, contempt or ridicule, or to cause him to be shunned or avoided. *Walters* at 1236 (citing Presser, *The Law of Torts*, § 111, page 739). Defamation tends to injure the reputation of the plaintiff and reflect upon his character.  *Id.*  The form of the statement is not important so long as the defamatory meaning is conveyed.

*Id.* In order for the defendant's words to be defamatory, they must be understood as such under the circumstances. A statement may be defamatory on its face or carry a defamatory meaning only by reason of extrinsic fact or circumstances by use of innuendo, inducement and colloquium. *Id.*

Under the circumstances of this case, and drawing all reasonable inferences in favor of Mr. Glaeser, I cannot conclude Sierra's statements are incapable of a defamatory meaning or effect as a matter of law. Mr. Glaeser was a school teacher whose job depends on maintaining a reputation of trust and engaging in only appropriate conduct. Accusations of sexual harrassment of a student and other inappropriate conduct of a sexual nature in the classroom, whether true or false, clearly tarnishes a teacher's character and harms his reputation in the community most important to him.

Assuming for purposes of summary judgment that Sierra published the statements attributed to her by saying them to school officials and other students, the next question under Colorado law is whether the statements were privileged and therefore not actionable in a suit for damages.

An individual's statement, even a defamatory one, may be absolutely or conditionally privileged depending on the context in which it was uttered. Communications made in the course of judicial or quasi-judicial proceedings, even though they are made maliciously and with knowledge of their falsity, are absolutely privileged if they bear a reasonable relationship to the subject of

inquiry. *MacLarty v. Whiteford*, 496 P.2d 1071,1072 (Colo. App. 1972). "'The reason underlying this doctrine is that public interest in the freedom of expression by participants in judicial proceedings, uninhibited by risk from resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy where he has been wronged thereby.'" *Id.* (quoting 50 Am.Jur.2d Libel and Slander § 231). Defamatory statements made by persons having a legitimate interest in the subject matter of the statements to persons sharing that interest enjoy a "common interest" or "qualified" privilege, meaning they will not give rise to liability in tort if, on balance, the interests of the defamed person in the protection of his reputation are deemed to yield to the interest of allowing the speaker to share her statements with those in common interest.  *See Dominguez v. Babcock*, 727 P.2d 362, 366 (Colo.1986)(holding memorandum by faculty members setting forth their reasons for requesting that a department head be reassigned was subject to qualified privilege under Restatement (Second) Torts, § 596).   A qualified privilege is not absolute, however, and will be lost if the plaintiff is shown to have "publishe[d] the material with malice, that is, knowing the matter to be false, or acts in reckless disregard as to its veracity."  *Dominguez* at 366 (citing Restatement (Second) of Torts § 600, comment b).

While some courts have recognized an absolute privilege for a student's allegations of sexual harrassment, *e.g. Reichardt v. Flynn*, 823 A.2d 566 (Md.

2003), they have done so under circumstances where the allegations were made in the course of a formal investigation and proceedings with greater indicia of due process and "judicial" formalities than existed here. I decline to address the question – which appears to be one of first impression in Colorado – of whether a student's complaints of sexual harrassment by a teacher are entitled to absolute immunity from liability for defamation. For purposes of this case, I conclude Sierra's statements fall in the qualified privilege category, entitling them to a presumption of good faith under *Dominguez*. Applying *Dominguez*, I find the interest in permitting high school students to complain about the propriety or impropriety of a teacher's conduct to school officials charged with the care and protection of students is of sufficient importance to merit protection.

The issue, of course, is whether Sierra's statements were made in good faith or, as Glaeser contends, maliciously and with reckless disregard for their falsity. In addition to Ms. Crawford's affidavit, Glaeser submits his own testimony pointing out factual inconsistencies and questioning the reliability of Sierra's statements, concluding the "vague" and factually dubious nature of her accusations reveal them "to have [had] as their only purpose, defamation." Pl's Resp. Br. at 10. In short, this case boils down to a high-stakes showdown of credibility. Was Glaeser a victim of unfounded allegations manufactured by a disgruntled young woman intent on harming his reputation or was Sierra a victim of sexual harrassment who did the right thing by going to school officials to report it.

Unfortunately, it appears the character of both will be weighed and judged by a jury. The Peters Motion for Summary Judgment on Glaeser's defamation claim against Sierra must be DENIED.

That having been said, the parties should know they, and Mr. Glaeser in particular with the injection of Ms. Crawford's affidavit, have presented this Court with a dilemma on summary judgment. It does not rest well with me to hale a young girl into court to answer to a lawsuit filed by a former teacher for conduct we must presume was taken in a good faith (and courageous) effort to feel safe at school. Likewise, however, the possibility of denying a teacher the ability to seek redress for a student's premeditated witch hunt of him through the manufacturing of false allegations of his sexual misconduct also does not rest well with me. Precisely because the stakes on the defamation claim are so high, I admonish both parties that in the end, if one or the other of them is shown to have acted in bad faith in pursuing or litigating this claim, I will assess attorney fees against that party and/or their counsel and consider other appropriate sanctions.

Based on the foregoing, the Peters Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 67) is GRANTED in part and DENIED in part. The Motion is granted and judgment shall enter in favor of the Peters and against Plaintiff Glaeser on each of his claims for federal civil right violations under 42 U.S.C. §§ 1983 and 1985. The Motion is denied, with the admonishments noted, as to Glaeser's claim for defamation. I will address Glaeser's claims against the School

District Defendants by separate Order as time permits.

BY THE COURT:

Dated October 13, 2005  **s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE